[Cite as *State v. Jonas*, 2020-Ohio-4236.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28569 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-407 |
| | : | |
| CASSANDRA L. JONAS | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of August, 2020.

. . . . . . . . . . .

GREGORY P. SPEARS, Atty. Reg. No. 0009002, Assistant Prosecuting Attorney, 195 South Clayton Road, New Lebanon, Ohio 45345
    Attorney for Plaintiff-Appellee

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 2541 Shiloh Springs Road, Dayton, Ohio 45426
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Cassandra L. Jonas, appeals from her conviction on one count of domestic violence, following a bench trial.[1] In support of her appeal, Cassandra contends that the conviction was against the manifest weight of the evidence. For the reasons that follow, the appeal is without merit, and the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 2}   On April 8, 2019, a complaint was filed in the Municipal Court of Montgomery County, Ohio, alleging that Cassandra had committed domestic violence, in violation of R.C. 2919.25(A), by jumping on her husband's back and clawing him.   According to the record, the event occurred on March 27, 2019, at the Jonas home in Jefferson Township, Ohio.   After Cassandra pled not guilty, a bench trial was held on September 17, 2019.

{¶ 3} At trial, the following witnesses testified: the victim, Spencer Jonas, and Deputy Cassie Brand from the Montgomery County Sheriff's Office.   Spencer testified that he and Cassandra married in 2016 and separated on April 4, 2019.    They are the parents of a one-year-old child, "O.J."

{¶ 4} On March 26, 2019, Spencer told Cassandra that "her butt smelled like poop."   In response, Cassandra woke up O.J., packed a bag for O.J., and left the house. Before Cassandra left, Spencer asked her politely to calm down, said that if they needed space in their home, they could take it, and asked her not to take O.J. into an unsafe situation because she was leaving angrily.   However, Cassandra left anyway.

---

[1] Because the victim and defendant have the same last name, we will refer to them by their first names.   For privacy reasons, we will also use initials for their child's name.

Transcript of Proceedings ("Tr."), p. 6-7.

{¶ 5} Cassandra returned home the next day. Later that day, Spencer arrived home with dinner. They had agreed to talk about the previous night and what they could do differently. However, while they were talking, O.J. spilled a drink. When Spencer asked Cassandra what he should do, she told him to hold O.J., and she would clean up "because [Spencer] would probably do it wrong." *Id.* at p. 7-8. They continued talking while Cassandra cleaned up the spill, but Cassandra refused to talk about what had happened the night before and ran at Spencer briskly, starting to claw at him as he was holding O.J. *Id.* at p. 8. At that point, Spencer had to turn to protect O.J. from being hit by the clawing and swinging. *Id.*

{¶ 6} According to Spencer, Cassandra hit him in the middle of the back, clawed at his neck on the left and right sides, and pulled on the collar of his shirt. As he was asking Cassandra to calm down, she called him a "f*cking a**hole." *Id.* at p. 9. Spencer tried to get away and went to their bedroom, but Cassandra followed him. Spencer was still holding O.J. *Id.*

{¶ 7} When Spencer went back to the living room to try to get his phone, Cassandra jumped on his back while he was still holding O.J. At that point, Cassandra fell onto the couch and tried to get back up, lunging and swinging at him from the front this time. Spencer asked her to please calm down, walked around the coffee table, and said he would have to call 911 if she could not calm down. Cassandra then kneeled on the ground, begging him not to take her child from her. *Id.* at p. 10.

{¶ 8} At that point, Spencer had dialed 911 but had not yet hit "send." He stated that he did not do so because he believed in reconciliation and forgiveness if both parties

were willing. *Id.* at p. 10-11.

{¶ 9} Spencer denied putting his hands on Cassandra and said he only stuck out his arm in defense. After he threatened to call 911, he and Cassandra agreed that they would put O.J. in her crib and talk about things. *Id.* at p. 11. The conflict was not resolved that night, however, and they slept in separate rooms. *Id.* at p. 12. As a result of the argument, Spencer had gashes in his neck, one of which scarred, and a gash on his hand.

{¶ 10} Spencer contacted the police eight days later, on April 4, 2019. Previously, on March 28, 2019, Cassandra had taken O.J. to Cleveland to see her family, and she stayed there until Sunday, March 31, 2019. This was a planned vacation. *Id.* at p. 13 and 15. Spencer stated that he waited until April 4, 2019, to call the police because he had college exams to complete and also took a few days to think about the situation.

{¶ 11} In the meantime, on Monday, April 1, 2019, Spencer called Cassandra and said that he wanted to stay with his grandparents to figure things out emotionally as well as to study, and she said that was fine. *Id.* at p. 14. Spencer then stayed with his grandparents and took his exam on Wednesday. However, when he came home after the exam, Cassandra was not there and would not answer his phone calls. On Thursday, she was also not at home and would not answer his calls; as a result, he was panicked about his daughter's safety. *Id.* That day, on April 4, 2019, he met with the police. *Id.* at p. 16. Spencer stated that when he did decide to call the police, Cassandra had not returned home for two days, and he felt the violence could be a continuing dangerous situation for O.J. *Id.* at p. 13.

{¶ 12} After Spencer made the police report, he called Cassandra and sent her

messages. The next day, Cassandra filed for a protection order against Spencer. Then, the same day, Spencer called Children Services to do a wellness check on O.J. However, Children Services said it could not help him without an address. *Id.* at p. 16. On Saturday, April 6, 2019, Spencer asked Cassandra if she wanted to reconcile, and she said yes. At the time, he was unaware that she had filed for a protection order. *Id.* at p. 16-17. He found out about the order on April 8, 2019, when he was served. *Id.* at p. 17. At the time of trial, litigation was ongoing in the domestic relations court about the protection order and divorce proceedings. *Id.* at p. 17-18.

{¶ 13} At trial, Spencer identified photos of his injuries, which he took on his cell phone six days after the incident. *Id.* at p. 17-20. He testified that he did not believe Cassandra suffered any injuries as a result of the incident. *Id.* at p. 20.

{¶ 14} In his written statement to the police, Spencer said that he "applied pressure on [Cassandra's] pressure point on the neck." *Id.* at p. 22 and Defendant's Ex. A. Spencer indicated that he may have applied physical contact as a defense. *Id.* He further indicated that he had the doctor adjust a rib due to playing basketball, but said it could have been a week before the incident rather than the Monday after it. *Id.* at p. 25. He denied, however, that the injuries he reported to the police were caused by either his playing basketball or his work. *Id.* at p. 29-30.

{¶ 15} At trial, Deputy Brand testified that she had been dispatched on April 4, 2019, to a domestic violence not in progress, and met with Spencer Jonas. *Id.* at p. 31. Brand took a written statement and also observed the scratches on Spencer's neck and hand. The marks were consistent with what Spencer told her had happened on March 27, 2019. *Id.* at p. 32. Before filing a domestic violence complaint, Brand also

attempted to contact Cassandra about her version of the events but did not receive a response. *Id.* at p. 32-33.

{¶ 16} After hearing the evidence, the trial court found Cassandra guilty as charged and imposed a jail term of 90 days. The jail sentence was suspended, and Cassandra was placed on community control for a year. This appeal followed.


I. Was the Judgment Against the Manifest Weight of the Evidence?

{¶ 17} Cassandra's sole assignment of error states that:

The Decision of the Trial Court, Finding Appellant Guilty of Domestic Violence, Was Against the Manifest Weight of the Evidence.

{¶ 18} Under this assignment of error, Cassandra contends that the judgment was against the weight of the evidence due to inconsistencies between Spencer's written statement to police and his testimony at trial. Specifically, at trial, Spencer testified that the delay in contacting the police was due to preparing for college exams and wanting to think things over. However, in his written statement, Spencer told the police that he delayed because he wanted Jesus Christ to heal his marriage; he also did not mention exams.

{¶ 19} In addition, at trial Spencer stated that he only held his arm out as a defense and did not use physical force against Cassandra. In contrast, his written statement indicated that he applied pressure on a pressure point on her neck. According to Cassandra, the domestic violence was done as retaliation because she was not at home when Spencer returned and ignored his calls. Finally, Cassandra suggests that Spencer may have sustained his injuries playing basketball.

**{¶ 20}** A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. In this situation, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 21}** Typically, in manifest weight review, we defer to trial court decisions on credibility issues, as those courts are in the best position to make that determination. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). We are also "mindful that in bench trials, 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Emswiler v. Bodey*, 2d Dist. Champaign No. 2012 CA 3, 2012-Ohio-5533, ¶ 44, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶ 22}** In the case before us, Cassandra was charged with having violated R.C. 2919.25(A). This statute provides that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A violation of the statute is a misdemeanor of the first degree. R.C. 2919.25(D)(2).

**{¶ 23}** After reviewing the record, we cannot say that the conviction was against the manifest weight of the evidence. The fact that Spencer was a family member was undisputed, and the fact that Cassandra caused or attempted to cause Spencer harm was also well supported by the evidence. There were also pictures of the scratches on Spencer's hand and shoulder, which were consistent with the described altercation. Furthermore, the trial court apparently did not believe that Spencer's actions in filing a complaint were retaliatory rather than an attempt to keep the family unit together, and we defer to the court's credibility decisions. We also note that Spencer did say in the police report that "This is not her first assault on me." Defendant's Ex. A, p.1. Consequently, the evidence does not weigh against the conviction, and this is not the exceptional case where reversal is warranted.

**{¶ 24}** Accordingly, Cassandra's sole assignment of error is overruled.

## III.   Conclusion

**{¶ 25}** Cassandra's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Gregory P. Spears
Christopher A. Deal
Hon. James D. Piergies